**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **MICHAEL WHITE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 1:24-cv-237-CWB** |
| | ) | |
| **MARTIN J. O'MALLEY,** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM OPINION AND ORDER**

**I.    Introduction and Administrative Proceedings**

Michael Jordan White ("Plaintiff") filed an application for Disability Insurance Benefits under Title II of the Social Security Act on September 23, 2021—alleging a disability onset date of January 25, 2021 due to memory loss, seizures, attention-deficit/hyperactivity disorder, hypertension, depression, and anxiety. (Tr. 10, 73-74).[1]  The claim was denied at the initial level on February 8, 2022 and again after reconsideration on June 29, 2022. (Tr. 73, 82-83, 91-92). Plaintiff then requested *de novo* review by an administrative law judge ("ALJ"). (Tr. 111). The ALJ subsequently heard the case on December 6, 2022, at which time testimony was given by Plaintiff (Tr. 10, 44-64) and by a vocational expert (Tr. 64-70). The ALJ took the matter under advisement and issued a written decision on June 21, 2023 that found Plaintiff not disabled. (Tr. 10-21).

The ALJ's written decision contained the following enumerated findings:

1.  The claimant will continue meeting the disability insured status coverage requirements under Title II of the Social Security Act through December 31, 2025.

---

[1] References to pages in the transcript are denoted by the abbreviation "Tr."

2. The claimant did not engage in any substantial gainful work activity since January 25, 2021, the alleged disability onset date (20 CFR 404.1571 *et seq.*).

3. The claimant has possessed the following combination of severe medical impairments since January 2021: a longstanding alcohol abuse disorder; hypertension; a long-time seizure disorder of a complex partial nature; a history of ADHD; and a depressive disorder versus a bipolar disorder (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of any one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform many elements of light level work as defined in 20 CFR 404.1567(b), but not a "full range" of such work (See SSR 83-10). For instance, [h]e cannot be exposed to excessive heat or humidity or hazards like potentially dangerous moving machinery, heights, ladders, ropes, scaffolds, freestanding bodies of water, or operation of equipment or motorized vehicles when on the job. From a mental standpoint, the claimant cannot perform more than one-to-four step, routine and repetitive types of unskilled work requiring only occasional changes in the daily work routine and occasional decision-making. He can tolerate no more than occasional interaction with supervisors and members of the general-public and should not be placed in any work requiring transactional activities or assembly line interaction with several other employees.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on August 8, 1984, and was 36 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563). He is currently 38 years old.

8. The claimant has a limited education (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569a).

11. The claimant has not been under a disability, as defined in the Social Security Act, from January 25, 2021, through the date of this decision (20 CFR 404.1520(g)).

(Tr. 13, 14, 19, 20, 21).  On February 20, 2024, the Appeals Council denied Plaintiff's request for review (Tr. 1-5), thereby rendering the ALJ's decision the final decision of the Commissioner. *See, e.g., Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).  Plaintiff now asks the court to reverse the final decision and to award benefits or, alternatively, remand the case for a new hearing and further consideration.  (Doc. 1 at p. 2; Doc. 10 at p. 16).

All parties have consented to the exercise of full civil jurisdiction by a United States Magistrate Judge (Docs. 13 & 14), and the undersigned finds that the case is ripe for review pursuant to 42 U.S.C. § 405(g).  Specifically, the court construes Plaintiff's supporting brief (Doc. 10) as a motion for summary judgment and the Commissioner's opposition brief (Doc. 11) as a competing motion for summary judgment.  Upon consideration of the parties' submissions, the relevant law, and the record as a whole, the court concludes that Plaintiff's motion for summary judgment is due to be denied, that the Commissioner's motion for summary judgment is due to be granted, and that the final decision is due to be affirmed.

## II.    Standard of Review and Regulatory Framework

The court's review of the Commissioner's decision is a limited one.  Assuming the proper legal standards were applied by the ALJ, the court is required to treat the ALJ's findings of fact as conclusive so long as they are supported by substantial evidence.  42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997).  "Substantial evidence is more than a scintilla," but less than a preponderance, "and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) ("Even if the evidence preponderates against the Commissioner's findings,

[a reviewing court] must affirm if the decision reached is supported by substantial evidence.")
(citations omitted).  The court thus may reverse the ALJ's decision only if it is convinced that
the decision was not supported by substantial evidence or that the proper legal standards were not
applied.  *See Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991).  Reversal is not warranted
simply because the court itself would have reached a different result.  *See Edwards v. Sullivan*,
937 F.2d 580, 584 n.3 (11th Cir. 1991).  Despite the deferential nature of its review, however,
the court must look beyond those parts of the record that support the decision, must view the record
in its entirety, and must take account of evidence that detracts from the evidence relied on in
the decision.  *See Hillsman v. Bowen*, 804 F.2d 1179, 1180 (11th Cir. 1986); *see also Walker v.
Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

To qualify for disability benefits and establish entitlement for a period of disability,
a person must be unable to:

> engage in any substantial gainful activity by reason of any medically determinable
> physical or mental impairment which can be expected to result in death or which
> has lasted or can be expected to last for a continuous period of not less than
> 12 months.

42 U.S.C. § 423(d)(1)(A).[2]  To make such a determination, the ALJ employs a five-step sequential
evaluation process:

(1) Is the person presently unemployed?

(2) Is the person's impairment severe?

(3) Does the person's impairment meet or equal one of the specific impairments set
forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1 [the Listing of Impairments]?

(4) Is the person unable to perform his or her former occupation?

---

[2]   A "physical or mental impairment" is one resulting from anatomical, physiological, or
psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory
diagnostic techniques.  42 U.S.C. § 423(d)(3).

(5) Is the person unable to perform any other work within the economy?

An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability.  A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).  *See also* 20 C.F.R. §§ 404.1520 & 416.920.[3]

The burden of proof rests initially upon the claimant.  *Phillips v. Barnhart*, 357 F.3d 1232, 1237-39 (11th Cir. 2004); *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003).  A claimant establishes a *prima facie* case of a qualifying disability once he or she has carried the burden of proof from step one through step four.  *Id*.  At step five, the burden shifts to  the Commissioner, who must then show that there are a significant number of jobs in the national economy that the claimant can perform.  *Id*.

In order to assess the fourth and fifth steps, the ALJ must determine the claimant's Residual Functional Capacity ("RFC").  *Phillips*, 357 F.3d at 1238-39.  The RFC is what the claimant is still able to do despite the claimant's impairments and is based on all relevant medical and other evidence.  *Id*.  It may contain both exertional and nonexertional limitations.  *Id*. at 1242-43.  At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine if there are jobs available in the national economy that the claimant can perform.  *Id*. at 1239.  To do so, the ALJ can use either the Medical Vocational Guidelines

---

[3] "[T]he law and regulations governing a claim for disability benefits are identical to those governing a claim for supplemental security income benefits*."  Patterson v. Bowen*, 799 F.2d 1455, 1456 (11th Cir. 1986).  Therefore, cases arising under Title II are appropriately cited as authority in Title XVI cases, and vice versa.  *See, e.g., Smith v. Comm'r of Soc. Sec.*, 486 F. App'x 874, 875 n.* (11th Cir. 2012) ("The definition of disability and the test used to determine whether a person has a disability is the same for claims seeking disability insurance benefits or supplemental security income."); *Claudia S. v. Saul*, No. 1:18-CV-01896, 2019 WL 3059745, *1 (N.D. Ga. July 12, 2019) ("[T]o the extent that the Court cites to DIB cases, statutes, or regulations, they are equally applicable to Plaintiff's SSI claims, and vice versa.").

("grids"), *see* 20 C.F.R. pt. 404 subpt. P, app. 2, or call a vocational expert ("VE").  *Id.* at 1239-40.  The grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience.  Each factor can independently limit the number of jobs realistically available to an individual, and combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled."  *Id.* at 1240.

### III.    Issues on Appeal

Plaintiff raises three issues on appeal: (1) that the ALJ failed to properly evaluate the medical opinion evidence regarding Plaintiff's mental residual functional capacity; (2) that the ALJ failed to properly evaluate Plaintiff's subjective statements; and (3) that the ALJ relied on a flawed hypothetical question posed to the vocational expert.  (Doc. 10 at p. 2).

### IV.    Discussion

#### A.    Medical Opinion Evidence Regarding Plaintiff's Mental RFC

Plaintiff contends that the ALJ failed to properly evaluate the medical opinion evidence regarding mental RFC.  (Doc. 10 at p. 2).  In response, the Commissioner contends that the ALJ properly considered the medical opinions and prior administrative medical findings, together with the other evidence, in assessing Plaintiff's mental RFC.  (Doc. 11 at p. 5).

Because Plaintiff's claim was filed on September 23, 2021 (Tr. 10), review must be guided by the revised regulations applicable to claims filed on or after March 27, 2017.  *See* 82 FR 5844-01, 2017 WL 168819 (Jan. 18, 2017); 20 C.F.R. § 404.1520c.  The revised regulations no longer use the phrase "treating source" but instead use "your medical source(s)."  20 C.F.R. § 404.1520c; *Nix v. Saul*, No. 4:20-CV-00790, 2021 WL 3089309, *5 (N.D. Ala. July 22, 2021).  For claims governed by the revised regulations, the agency "will not defer or give any specific evidentiary

weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's own] medical sources." 20 C.F.R. § 404.1520c(a); *Harner v. Soc. Sec. Admin., Comm'r*, 38 F.4th 892, 898 (11th Cir. 2022). "Further, the regulations governing claims filed on or after March 27, 2017, no longer mandate particularized procedures that the adjudicator must follow in considering opinions from treating sources (*e.g.*, requirement that adjudicators must 'give good reasons' for the weight given a treating source opinion)." *Nix*, 2021 WL 3089309 at *6 (citing 20 C.F.R. § 404.1520c(b)). Instead, the "new regulations require an ALJ to apply the same factors when considering the opinions from *all* medical sources." *Simon v. Kijakazi*, No. 8:20-CV-1650, 2021 WL 4237618, *3 (M.D. Fla. Sept. 17, 2021) (emphasis in original) (citing 20 C.F.R. § 404.1520c(a)).

Stated differently, in evaluating the persuasiveness of the medical opinion(s) or prior administrative medical finding(s), "[the agency] will consider those medical opinions or prior administrative medical findings from that medical source together" using the following factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors that "tend to support or contradict a medical opinion or prior administrative medical finding." 20 C.F.R. § 404.1520c(a), (c). "The most important factors … [used to] evaluate the persuasiveness of medical opinions and prior administrative medical findings are supportability ... and consistency." 20 C.F.R. § 404.1520c(a), (b)(2); *Simon*, 2021 WL 4237618 at *3. Therefore, "the ALJ must explain how he or she considered the supportability and consistency factors." *Wynn v. Kijakazi*, No. 8:20-CV-2862, 2022 WL 1115296, *4 (M.D. Fla. Apr. 14, 2022). "The ALJ must explain in his decision how persuasive he finds a medical opinion and/or a prior administrative medical finding based on these two factors." *Nix*, 2021 WL 3089309 at *6 (citing 20 C.F.R. § 404.1520c(a)-(c)). "However, the ALJ need not use any magic words in

discussing whether a medical opinion is supported by evidence from the medical source himself and whether the opinion is consistent with other evidence of record." *Thaxton v. Kijakazi*, No. 1:20-CV-00616, 2022 WL 983156, *8 (M.D. Ala. Mar. 30, 2022); *Williamson v. Kijakazi*, No. 2:20-CV-772, 2022 WL 2257050, *3 (M.D. Ala. June 23, 2022). "'The ALJ may but is not required to explain how he considered the other remaining factors.'" *Id*. at *4 (citation omitted); 20 C.F.R. § 404.1520c(b)(2). And the ALJ is "not required to articulate how [he] considered evidence from nonmedical sources." 20 C.F.R. § 404.1520c(d). Further, "[t]he ALJ is under no obligation to 'bridge' every piece of evidence he finds inconsistent with a specific opinion. ... Nothing requires the ALJ to discuss every piece of evidence so long as the decision does not broadly reject evidence in a way that prevents meaningful judicial review." *Gogel v. Comm'r of Soc. Sec.*, No. 2:20-CV-366, 2021 WL 4261218, *9 (M.D. Fla. Sept. 20, 2021) (citations omitted).

An RFC determination is an assessment of what a claimant is still able to do despite the claimant's impairments and is based on all relevant medical and other evidence. *Phillips*, 357 F.3d at 1238-39; *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir.1997); 20 C.F.R. § 404.1545(a) ("Your residual functional capacity is the most you can still do despite your limitations."). "[T]he task of determining a claimant's [RFC] and ability to work rests with the [ALJ], not a doctor." *Moore v. Soc. Sec. Admin., Comm'r*, 649 F. App'x 941, 945 (11th Cir. 2016); *Hollingsworth v. Comm'r of Soc. Sec.*, 846 F. App'x 749, 753 (11th Cir. 2021) ("A claimant's RFC is a matter reserved for the ALJ's determination, and while a physician's opinion on the matter is considered, it is not dispositive."); *Bouie v. Astrue*, 226 F. App'x 892, 894 (11th Cir. 2007) ("An ALJ may reject the opinion of any physician when the record supports a contrary conclusion. The resolution of conflicting evidence is the function of the ALJ, not the Court.") (citation omitted); *Frank v. Comm'r of Soc. Sec.*, No. 2:20-CV-962, 2022 WL 598036,

*8 (M.D. Fla. Feb. 10, 2022), *report and recommendation adopted*, No. 2:20-CV-962, 2022 WL 596833 (M.D. Fla. Feb. 25, 2022) ("[T]here is no requirement that an ALJ base the RFC finding on a medical source's opinion."); *Tolbert v. Kijakazi*, No. 3:21-CV-33, 2022 WL 4591646, *2 (M.D. Ala. Sept. 29, 2022) ("An ALJ may 'distill a claimant's RFC from an amalgamation of the record as a whole, without requiring a specific medical opinion to articulate a specific functional limitation.'") (citation omitted).  "It is 'solely the province of the [Commissioner]' to resolve conflicts in the evidence and assess the credibility of witnesses." *Lacina v. Comm'r, Soc. Sec. Admin.*, 606 F. App'x 520, 525 (11th Cir. 2015) (citation omitted).

"To find that an ALJ's RFC determination is supported by substantial evidence, it must be shown that the ALJ has 'provide[d] a sufficient rationale to link' substantial record evidence 'to the legal conclusions reached.'" *Eaton v. Colvin*, 180 F. Supp. 3d 1037, 1055 (S.D. Ala. 2016) (citations omitted).  Although an RFC determination must be supported by substantial evidence, the ALJ "is not required to specifically address every aspect of an opinion or every piece of evidence in the record" in order for the determination to be affirmed.  *Coley v. Comm'r of Soc. Sec.*, 771 F. App'x 913, 917 (11th Cir. 2019); *see also Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005).  Moreover, "to find that the ALJ's RFC assessment is supported by substantial evidence, it is not necessary for the ALJ's assessment to be supported by the assessment of an examining or treating physician." *Smoke v. Kijakazi*, No. CV 21-0206, 2022 WL 721532, *4 (S.D. Ala. Mar. 9, 2022).

The ALJ evaluated opinion evidence from Jack Carney, Ph.D., who conducted a consultative examination on February 1, 2022.  (Tr. 17, 427).  The ALJ noted that at the examination Plaintiff reported a history of anxiety treated with Celexa, which he had not taken for "a while" because of a lack of insurance, and a history of attention deficit disorder ("ADD"),

which was treated with medications as a child.  (Tr. 17, 428-29, 432).  However, the ALJ noted that Plaintiff's subjective complaints related primarily to his seizure activity.  (Tr. 17, 428-29).  The ALJ also noted that Plaintiff admitted to ongoing alcohol consumption.  (Tr. 434, 437).

The ALJ further noted that upon examination Plaintiff presented as withdrawn with a sad, depressed mood and tearful affect but otherwise showed a fully alert and oriented sensorium with adequate attention and concentration, as he was able to perform simple calculations.  (Tr. 17, 428, 434-35).  Dr. Carney found that Plaintiff showed intact memory, as he could recall three digits forward and two digits backward, could describe the prior day's activities, and could remember general historical information.  (Tr. 17, 436).  Dr. Carney additionally found that Plaintiff's thought processes showed no signs of confusion, loose associations, or tangential thinking and that he demonstrated adequate insight and judgment.  (Tr. 17, 436-37).  Dr. Carney assessed Plaintiff as having a major depressive disorder, moderate with anxious distress and melancholic features, a major neurocognitive disorder due to seizures, and localization-related symptomatic epilepsy.  (Tr. 17, 438).  In summarizing Dr. Carney's opinion, the ALJ noted that Dr. Carney opined that Plaintiff did not appear to possess the ability to understand, carry out, and remember instructions in a work setting or respond appropriately to supervision, coworkers, and work pressures in a work setting.  (Tr. 17, 438).

Plaintiff argues that the ALJ improperly rejected the opinion of Dr. Carney.  (Doc. 10 at pp. 9-10).  The ALJ found that, to the extent Dr. Carney's assessment constituted opinion evidence, Dr. Carney's assessment was "unpersuasive"—as it was not supported by his own examination notes and was inconsistent with the other evidence of record.  (Tr. 17).  The ALJ explained that not only did the record show no professional mental health treatment, but routine neurology records and emergency room records showed no significant deficits on psychiatric examination.

(Tr. 17, 308, 323, 338, 352, 419, 422, 461, 471, 480, 497, 507, 527, 540). Plaintiff's lack of mental health treatment and essentially normal psychiatric evaluations from other providers support the finding that Dr. Carney's opinion was not consistent with the record as a whole. *See Scott v. Kijakazi*, No. 8:20-CV-306, 2021 WL 3855947, *4 (M.D. Fla. Aug. 30, 2021) ("The lack of treatment notes from any mental health practitioners in the record undermines Plaintiff's claim that his mental impairments were severe or limited his ability to work.") (citing *Manzo v. Comm'r of Soc. Sec.*, 408 F. App'x 265, 269 (11th Cir. 2011) (finding substantial evidence supported an ALJ's finding that a claimant failed to establish that her anxiety was a severe mental impairment where there was a lack of mental health treatment); *Wimpee v. Berryhill*, No. 8:17-CV-1912, 2019 WL 1123525, *4 (M.D. Fla. Mar. 12, 2019) ("[N]o treatment notes from or referrals to any mental health practitioners appear in the record, thereby undermining the Plaintiff's claim that her mental impairments were severe or restricted her ability to work."). The ALJ also explained that Dr. Carney did not provide any rationale or support for his findings and that the degree of impairment assessed was inconsistent with largely unremarkable findings on mental status examination, which showed some signs of depression but otherwise normal thoughts, memory, concentration, insight, and judgment. (Tr. 17, 434-37). Thus, the ALJ properly determined pursuant to 20 C.F.R. 404.1520c(c)(1) that Dr. Carney's own examination failed to support the level of limitations assessed by Dr. Carney.

The ALJ additionally discussed a second consultative examination, which was conducted by David Ghostley, Psy.D. in April 2023. (Tr. 17). According to Dr. Ghostley, Plaintiff reported a history of treatment for ADHD and depression in the past but reported an inability to afford his medications at the time of the examination. (Tr. 17, 590). On examination, Dr. Ghostley noted that Plaintiff's breath smelled like alcohol. (Tr. 17, 590). Dr. Ghostley stated that Plaintiff showed

some difficulty with focus but otherwise presented as alert and attentive with normal productivity and structure of thoughts.  (Tr. 17, 590).  Plaintiff also was noted to show adequate insight into acknowledging his problems and judgment with regard to social functioning and family relationships.  (Tr. 17, 590-91).  And the ALJ expressly emphasized the following: "*Accordingly, Dr. Ghostley diagnosed alcohol intoxication, an unspecified depressive disorder, and a history of ADHD, but opined that Plaintiff's ability to understand, remember, and carry out instructions, as well as to respond appropriately to supervisors, coworkers, and work pressures in a work setting is generally unimpaired, unless intoxicated.*"  (Tr. 17, 591) (emphasis in original).

Based upon the medical record and opinion evidence, the ALJ concluded: "Finally, although the claimant's depressive symptoms may improve somewhat in the absence of alcohol use, the record does not indicate any disabling mental impairments during the relevant period, even in the setting of admitted ongoing alcohol consumption."  (Tr. 18).

In addressing the prior administrative medical findings of the State agency psychological consultants regarding Plaintiff's mental limitations, the ALJ noted that Linda Duke, Ph.D. and Virginia Lee Bare, Ph.D. both opined as follows:

> Claimant retains sufficient mental capacity to understand and remember short and simple one to two step instructions.

> Claimant exhibits some neurocognitive fatigue; however, he retains sufficient mental capacity to carry out short and simple one to two step directions. The claimant struggles with the ability to understand and remember complex instructions and carry out complex instructions.  Claimant would function best with a familiar repetitive work routine, but should avoid the following activities: excessive workloads, quick decision making, rapid changes, and multiple demands. Claimant would benefit from a slowed pace.  Claimant can maintain attention and concentration for at least a 2-hour period during an 8-hour day utilizing all customary rest breaks.

> Claimant struggles with the ability to interact appropriately with supervisors. Corrective instruction should be presented in a simple, non-confrontational, and supportive manner from supervisors.

> Claimant struggles with the ability to respond appropriately to usual work situations and to changes in a routine setting. Changes in the work setting should be infrequent, introduced gradually, and be well explained. Claimant will require assistance in setting appropriate goals and planning.

(Tr. 18-19, 80-81, 89-90).

The ALJ found that the prior administrative medical findings were "somewhat persuasive," as the record generally revealed no more than moderate mental residual functional capacity limitations in the case. (Tr. 13-14, 19). The ALJ explained that the lack of any mental health treatment, combined with Plaintiff's largely unremarkable presentation during the consultative examinations despite alcohol use, suggested Plaintiff's ability to perform at least one-to-four step instructions. (Tr. 19). The ALJ further explained that nothing in the record showed any problems with orientation, thoughts, memory, concentration, insight, or judgment that would affect his ability to engage in jobs with excessive workloads, quick decision making, rapid changes, or multiple demands. (Tr. 19, 308, 323, 338, 352, 419, 422, 461, 471, 480, 497, 507, 527, 540). However, the ALJ found that to accommodate any changes in mood due to depression or distractibility due to a history of ADHD, and to avoid stress, the record supported the need for moderate limitations on interacting with others, concentrating and maintaining pace, and adaptation. (Tr. 19). The ALJ concluded that the record as a whole supported Plaintiff's ability to perform one-to-four step, routine and repetitive types of unskilled work, requiring only occasional changes in the daily work routine and occasional decision-making, and that he could tolerate no more than occasional interaction with supervisors and members of the general public and that he should not be placed in any work requiring transactional activities or assembly line interaction with several other employees. (Tr. 19).

As stated above, the ALJ—and not a doctor—has the duty to determine a claimant's RFC. *Moore*, 649 F. App'x at 945. Therefore, an ALJ "is not required to base[] [the] RFC on a doctor's

opinion." *McCarver v. Comm'r of Soc. Sec.*, No. 4:20-CV-1053, 2022 WL 860190, *6 (N.D. Ala. Mar. 22, 2022) (citing *Castle v. Colvin*, 557 F. App'x 849, 853-54 (11th Cir. 2014)); *Vilches v. Kijakazi*, No. 3:21-CV-15, 2022 WL 11455775, *2 (M.D. Ala. Oct. 19, 2022) ("Indeed, 'an ALJ's RFC assessment need not match or mirror the findings or opinions of any particular medical source ... because the reasonability of assessing the RFC rests with the ALJ.'") (citation and internal quotation marks omitted).  While state agency medical or psychological consultants are considered experts in Social Security disability evaluation, "[a]dministrative law judges are not required to adopt any prior administrative findings, but they must consider this evidence according to §§ 404.1520b, 404.1520c, and 404.1527, as appropriate."  20 C.F.R. § 404.1513a(b)(1).  The regulations further provide that the Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's own] medical sources."  20 C.F.R. § 404.1520c(a). "Thus, an ALJ need not adopt every part of an opinion that the ALJ finds persuasive." *Rivera Misla v. Comm'r of Soc. Sec.*, No. 6:20-CV-1076, 2021 WL 2417084, *2 (M.D. Fla. June 14, 2021); *Vilches*, 2022 WL 11455775 at *3 ("Moreover, the ALJ provides an RFC by considering the entirety of the evidence rather than a single opinion—not simply regurgitating in the RFC from even persuasive medical opinions, and some slight deviation may be appropriate."); *Szoke v. Kijakazi*, No. 8:21-CV-502, 2022 WL 17249443, *9 n.12 (M.D. Fla. Nov. 28, 2022) (collecting cases).  Nor is an ALJ "compelled to 'specifically refer to every piece of evidence in his decision.'"  *Id.* (citation omitted).

Plaintiff argues that, although purportedly finding Dr. Ghostley's report "partially persuasive," the ALJ wholly disagreed with Dr. Ghostley's opinion.  (Doc. 10 at p. 6).  Plaintiff maintains that because Dr. Ghostley concluded that Plaintiff's mental impairments were non-

severe by finding that Plaintiff had no restrictions in a work environment due to his psychiatric conditions, the ALJ must have disagreed with that conclusion—as the ALJ found that Plaintiff had severe depressive disorder versus bipolar disorder and a history of ADHD. (*Id.*; Tr. 13, 591). Plaintiff thus argues that any reliance on Dr. Ghostley's report by the ALJ is illusory and fails to support the decision regarding Plaintiff's functional capacity in a work environment. (*Id.*).

The ALJ was under no obligation to adopt every part of Dr. Ghostley's opinion (or any other doctor's opinion), and the ALJ's opinion reflects that the ALJ considered the entirety of the record in determining Plaintiff's RFC. *See Cooper v. Comm'r of Soc. Sec.*, 521 F. App'x 803, 807 (11th Cir. 2013) (holding that "[t]he record demonstrates that the ALJ did not unconditionally adopt those non-treating opinions because the ALJ found that [the plaintiff] was *more* limited than those opinions concluded ... and the ALJ, who made the ultimate determination, had access to the entire record as well as [the plaintiff's] testimony") (emphasis in original). "The regulations do not require ALJs to adopt into an RFC every part of an opinion that they otherwise find persuasive." *Guth v. Comm'r of Soc. Sec.*, No. 2:21-CV-106, 2022 WL 8211404, *9 (M.D. Fla. Aug. 5, 2022), *report and recommendation adopted*, No. 2:21-CV-106, 2022 WL 4115784 (M.D. Fla. Sept. 9, 2022) (citing 20 C.F.R. §§ 404.1520c(a), 416.920c(a)). *See also Freyhagen v. Comm'r of Soc. Sec. Admin.*, No. 3:18-CV-1108, 2019 WL 4686800, *8 (M.D. Fla. Sept. 26, 2019) ("[T]he ALJ's RFC assessment did not need to match or mirror the findings or opinions of any particular medical source ... because the responsibility of assessing the RFC rests with the ALJ."); *Tolbert*, 2022 WL 4591646 at *2 ("There is no requirement that an ALJ include every limitation from a medical opinion verbatim in an RFC determination or specifically address every aspect of an opinion or every piece of evidence in the record."); *Powell v. Kijakazi*, No. CV 321-066, 2022 WL 4000719, *5 (S.D. Ga. Aug. 9, 2022), *report and recommendation adopted*,

No. CV 321-066, 2022 WL 3970838 (S.D. Ga. Aug. 31, 2022) ("[F]inding a medical opinion persuasive does not require the ALJ to fully incorporate that opinion into the RFC."); *Williamson*, 2022 WL 2257050 at *3.

The record shows that the ALJ considered the entirety of the record and properly applied the regulations in considering the persuasiveness of Dr. Ghostley's opinion under 20 C.F.R. § 404.1520c.  In evaluating Dr. Ghostley's opinion, the ALJ reiterated that "following the May 2023 consultative examination, Dr. Ghostley opined that the claimant's ability to understand, remember, and carry out instructions, as well as to respond appropriately to supervisors, coworkers, and work pressures in a work setting is generally unimpaired, unless intoxicated."  (Tr. 19, 591).  The ALJ noted that Dr. Ghostley also completed a medical source statement that found no functional limitations in any of the mental areas required to perform work activity and that Dr. Ghostley commented that when in a state of alcohol intoxication, Plaintiff demonstrated difficulty focusing and attending.  (Tr. 19, 587-88).  The ALJ noted that "[o]therwise, even in the setting of apparent alcohol use, mental status examination revealed largely unremarkable findings."  (Tr. 19, 590-91; 308, 323, 338, 352, 419, 422, 461, 471, 480, 497, 507, 527, 540).  The ALJ also noted that at the time of the examination Plaintiff presented as intoxicated, which was consistent with his own hearing testimony and admitted daily alcohol use.  (Tr. 19, 48-49, 590).  And the ALJ found that the degree of limitation assessed was consistent with findings both within Dr. Ghostley's report and the longitudinal record as a whole.  (Tr. 19).  Nevertheless, in considering the record as a whole, including the other opinion evidence, the ALJ concluded that the record warranted at least some degree of impairment to accommodate any symptoms of Plaintiff's history of ADHD and diagnosed depression.  (Tr. 19).  For this reason, the ALJ found that Dr. Ghostley's assessment was only partially persuasive, explaining that "the mental residual functional capacity in this case

restricts the claimant from performing more than one-to-four step routine and repetitive types of

unskilled work with the remaining assessments found herein, which are otherwise consistent with

the State Agency assessments and objective findings on mental status examination." (Tr. 19).[4]

      Plaintiff further argues that the ALJ's evaluation of the prior administrative medical

findings of State agency psychological consultants Dr. Duke and Dr. Bare are flawed. The ALJ's

opinion, however, reflects that the ALJ considered the entire record when evaluating the opinions

of Dr. Duke and Dr. Bare. The ALJ found that the opinions of Dr. Duke and Dr. Bare were

"somewhat persuasive," as they assessed moderate functional limitations in all four paragraph "B"

categories. (Tr. 13-14, 19, 77, 86). The ALJ noted that Plaintiff did not show any significant

deficits in alertness, orientation, or memory during either consultative examination and that

Plaintiff was able to perform simple daily tasks such as preparing simple meals and performing

light chores (Tr. 13, 19, 213, 433, 590), that the record showed Plaintiff had some issues with

a depressed mood but did not show any significant issues with cooperation or behavior and was

---

[4] Plaintiff argues that Dr. Ghostley opined that Plaintiff had no severe medically determinable mental impairments or any limitations absent substance use but that the "ALJ obviously disagreed with this conclusion, and therefore, any purported reliance on the report about Plaintiff's mental conditions is lip service and inaccurate" and that "[t]o the extent Dr. Ghostley found disabling limitations with substance use, the ALJ also clearly did not agree with this finding as he never concluded Plaintiff was disabled or undertook an evaluation to determine if the disability would persist absent substance use." (Doc. 12 at p. 4). Plaintiff then asserts, "[t]he ALJ cannot create a backdoor method of avoiding the required analysis by the Commissioner's Regulations when drug and/or alcohol use is material." (*Id.*, citing *Doughty v. Apfel*, 245 F.3d 1274, 1279 (11th Cir. 2001) ("The regulations implementing 423(d)(2)(C) provide that once the Commissioner determines a claimant to be disabled and finds medical evidence of drug addiction or alcoholism, the Commissioner then 'must determine whether ... drug addiction or alcoholism is a contributing factor material to the determination of disability.'" (quoting 20 C.F.R. § 404.1535)). However, Dr. Ghostley specifically diagnosed Plaintiff has having unspecified depressive disorder and history of ADHD as impairments. (Tr. 591). Moreover, Plaintiff's reliance on *Doughty* is misplaced, as the Commissioner must determine whether drug addiction or alcoholism is a contributing factor material to the determination of disability only after a finding of disability. Because the ALJ never found that Plaintiff was disabled, the materiality finding was not required.

able to socialize by talking with his neighbor and visiting the homes of family and friends (Tr. 13, 19, 215, 433), that although depression and ADHD could cause some issues with distractibility, mental status examinations did not show any significant deficits in thought processes or on testing of Plaintiff's attention and concentration (Tr. 14, 19, 435-37, 590-91), that Plaintiff reported the ability to focus on activities such as preparing simple meals, performing light chores, counting change, and socializing with family and friends (Tr. 14, 213-15, 435-37), and  that Plaintiff did not show any significant deficits in insight or judgment on mental status examinations and did not suffer any depressive episodes requiring inpatient or emergent care.  (Tr. 14, 19, 76, 436-37, 590-91).

Plaintiff argues that the ALJ erred by not adopting the State agency consultants' finding that he would be limited to one-to-two step instructions and carrying out no more than short and simple one-to-two step directions, as the jobs the ALJ determined Plaintiff could perform in the national economy all had a reasoning level of two, which requires carrying out "detailed but uninvolved written or oral instructions."  (Doc. 10 at p. 7; Tr. 80, 89); (Tr. 21; *see* DICOT 209.587-034, 1991 WL 671802 (merchandise marker); DICOT 222.587-038, 1991 WL 672123 (router); DICOT 222.687-022, 1991 WL 672133 (routing clerk).  Plaintiff maintains that only jobs with a reasoning level of one permit an individual to work with a limitation to carry out non-detailed, short, simple instructions, or jobs with no more than one- or two-step instructions/directions.  (*Id.*).  However, the ALJ was under no obligation to fully accept the State agency consultants' opinions.  *Cooper*, 521 F. App'x at 807; *Guth*, 2022 WL 8211404 at *9; *Moore*, 649 F. App'x at 945; *Castle*, 557 F. App'x at 853-54; *Vilches*, 2022 WL 11455775 at *2; 20 C.F.R. § 404.1513a(b)(1).  As discussed in detail above, the ALJ properly considered the entire record in assessing the State agency consultants' opinions and determining Plaintiff's RFC.

18

Plaintiff argues the ALJ's suggestion that the State agency consultants' opinions were flawed because Plaintiff did not receive mental health treatment is erroneous because the lack of treatment does not make their opinions less supported or consistent.  (Doc. 10 at p. 8).  Plaintiff further asserts that Plaintiff's lack of treatment due to his loss of insurance and inability to afford psychiatric care cannot be held against him.  (*Id.*).

The record reflects that the ALJ found that Plaintiff did not show any significant deficits in insight or judgment on mental status examinations and noted that Plaintiff did not suffer any depressive episodes requiring inpatient or emergent care.  (Tr. 14).  The ALJ noted that at the hearing Plaintiff testified that he drank alcohol every day.  (Tr. 15, 48-49).  The ALJ found that a preponderance of the evidence in the record established that Plaintiff had, among other impairments, "a depressive disorder versus a bipolar disorder likely exacerbated by acknowledged continuing daily alcohol abuse."  (Tr. 15).  In discussing the objective medical evidence, the ALJ noted that medical records showed that in March 2019 Plaintiff was hospitalized for a witnessed seizure, which occurred in the setting of daily alcohol use and non-use of antiepileptic medications, that in January 2021 Plaintiff not only remained off antiepileptic medications but also admitted to continued heavy drinking of beer daily, that in a July 2021 emergency room visit for another single episode seizure Plaintiff admitted to drinking daily and was advised to "stop drinking" as alcohol was identified as the likely cause of his seizures, that in August 2022 Plaintiff denied taking his seizure medication due to financial barriers and a lack of insurance and admitted to drinking approximately one case of beer per day, and that in November 2022 Plaintiff presented as intoxicated with a blood alcohol level of 0.45.  (Tr. 16, 305-09, 320, 367-402, 472, 494, 506, 566).

The ALJ found that Plaintiff had repeatedly acknowledged daily drinking to excess and that the record documented daily non-compliance with his prescriptions for both hypertension and

seizures.  (Tr. 17).  The ALJ noted that, although Plaintiff alleged difficulty affording prescription medications, the record did not show any attempt at procuring low-cost care or prescription assistance and that Plaintiff offered no viable explanation as to why he was able to afford purchases of daily alcohol but not prescription medication.  (Tr. 17).  The ALJ concluded that the record suggested that when Plaintiff was compliant with his medications his seizures and blood pressure could be and were adequately controlled and his overall health was much improved and that the same could be said of his depression.  (Tr. 17).[5]

"Minimal or no treatment for an alleged disabling condition may be validly considered by an ALJ in discrediting a claimant's subjective complaints."  *Beard v. Saul*, No. CV 120-019, 2021 WL 1555042, *6 (S.D. Ga. Mar. 30, 2021), *report and recommendation adopted*, No. CV 120-019, 2021 WL 1554074 (S.D. Ga. Apr. 20, 2021); SSR 16-3p, 2017 WL 5180304, *8-9 (S.S.A. Oct. 25, 2017); 20 C.F.R. § 404.1529(c)(3); *Wolfe v. Chater*, 86 F.3d 1072, 1078 (11th Cir. 1996) (recognizing that a physician's conservative medical treatment for a particular condition may negate a claim of disability); *Horowitz v. Comm'r of Soc. Sec.*, 688 F. App'x 855, 863-64 (11th Cir. 2017) (finding that a conservative treatment regimen for a plaintiff's mental and physical impairments supported the ALJ's finding that the plaintiff's subjective complaints were inconsistent with the medical evidence: "The ALJ's credibility determination is supported by substantial evidence ...: Horowitz received conservative treatment for her impairments. ALJs are permitted to consider the type of a treatment a claimant received in assessing the credibility of her subjective complaints."); *Beegle v. Social Security Admin., Comm'r*, 482 F. App'x 483, 487

---

[5] The ALJ asked Plaintiff if he had tried any charity clinics to prescribe his blood pressure medication, to which he responded, "I never knew anything about that."  (Tr. 52).  The ALJ then informed Plaintiff that there are charity clinics that will not charge for "some basic medicines." (Tr. 52).

(11th Cir.2012) ("When evaluating a claimant's statements regarding his symptoms and their functional effects, the ALJ may consider whether the level or frequency of treatment is consistent with the level of complaints.").  Moreover, "[g]enerally, the ALJ may consider noncompliance with treatment in determining whether a claimant is disabled, as the failure to follow prescribed treatment without a good reason will preclude a finding of disability."  *Grisales v. Comm'r of Soc. Sec.*, No. 8:22-CV-112, 2023 WL 2596807, *5 (M.D. Fla. Mar. 22, 2023) (citing 20 C.F.R. § 404.1530(a) & (b) ("In order to get benefits, you must follow treatment prescribed by your medical source(s) if this treatment is expected to restore your ability to work. ... If you do not follow the prescribed treatment without a good reason, we will not find you disabled ... .").  Yet, the Eleventh Circuit has stated that when an ALJ "'primarily if not exclusively' relies on a claimant's failure to seek treatment, but does not consider any good cause explanation for this failure, this court will remand for further consideration.  However, if the ALJ's determination is also based on other factors, such as RFC, age, educational background, work experience, or ability to work despite the alleged disability, then no reversible error exists."  *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1268 (11th Cir. 2015) (citations omitted); *Ellison*, 355 F.3d at 1275 (explaining that because the ALJ's ultimate determination of disability "was not significantly based on a finding of noncompliance," "the ALJ's failure to consider [the plaintiff's] ability to afford [treatment] [did] not constitute reversible error.").  Moreover, SSR 16-3p states, in part, as follows:

> [I]f the frequency or extent of the treatment sought by an individual is not comparable with the degree of the individual's subjective complaints, or if the individual fails to follow prescribed treatment that might improve symptoms, we may find the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence of record.  We will not find an individual's symptoms inconsistent with the evidence in the record on this basis without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints.  We may need to contact the individual regarding the lack of treatment or, at an administrative proceeding, ask why he or she has not complied with or sought treatment in a

manner consistent with his or her complaints.  When we consider the individual's treatment history, we may consider (but are not limited to) one or more of the following:

…

An individual may not be able to afford treatment and may not have access to free or low-cost medical services.

…

… [W]e will consider and address reasons for not pursuing treatment that are pertinent to an individual's case.  We will review the case record to determine whether there are explanations for inconsistencies in the individual's statements about symptoms and their effects, and whether the evidence of record supports any of the individual's statements at the time he or she made them.  We will explain how we considered the individual's reasons in our evaluation of the individual's symptoms.

SSR 16-3p, 2017 WL 5180304, *9-10.

The ALJ thoroughly discussed the entire record in addressing Plaintiff's subjective statements and determined that the evidence in the record did not support a finding of disability.  Here, the ALJ did not deny benefits due to noncompliance with treatment or failure to seek treatment.  In assessing Plaintiff's subjective complaints, the ALJ only mentioned Plaintiff's daily consumption of alcohol in conjunction with claims that he could not afford medication or treatment as a factor to consider.  In any event, a review of the ALJ's decision reflects that the ALJ considered the entire record, which included the ALJ's thorough discussion of the objective medical evidence, the function reports, opinion testimony, and activities of daily living.  Because those reasons are not based on Plaintiff's noncompliance or failure to seek treatment, the court concludes that the ALJ's determination was not "primarily if not exclusively" based on a finding of noncompliance or failure to seek treatment.

Plaintiff objects to the ALJ's characterization of his presentation during the consultative examinations as "largely unremarkable" despite alcohol use (Tr. 19), citing Dr. Carney's finding that Plaintiff was withdrawn with poor eye contact, offered a paucity of information during the interview, had a sad and depressed mood with tearful affect, had an  inability to spell "world"

backwards, had decreased fund of information, and had decreased abstract thinking.  (Doc. 10 at p. 9; Tr. 434-36).  Plaintiff also cites to Dr. Ghostley's report,  which stated that he exhibited difficulty focusing at times and had fair eye contact, a depressed mood, ruminations on things he could not change, disturbed sleep, and a sad and tearful affect.  (*Id*.; Tr. 590).  Plaintiff further maintains that the ALJ erred by substituting his lay interpretation of Dr. Carney's examination, which differed from the State Agency consultants who based their opinions on the same evidence. (*Id*.).  Plaintiff asserts that "[w]hile some other exam findings were normal, mental status examinations usually show at least some normal findings unless the claimant is floridly psychotic. That does not mean Plaintiff is not disabled."  (Doc. 12 at p. 2).

Plaintiff's arguments essentially invite the court to re-weigh the evidence, which is prohibited by the regulations. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).  "The issue is not whether some evidence might support Plaintiff's allegations, but rather, whether substantial evidence supports the ALJ's findings."  *Cooper-Neal v. Kijakazi*, No. 8:22-CV-2420, 2023 WL 8947174, *4 (M.D. Fla. Dec. 28, 2023) (citing *Dyer*, 395 F.3d at 1210).  Based upon the totality of the evidence, the court concludes that the ALJ properly considered the entire record in determining Plaintiff's RFC and that the ALJ's determination was supported by substantial evidence.  The ALJ thoroughly discussed the medical evidence and properly considered the factors of supportability and consistency in assessing the opinion evidence.  *See* 20 C.F.R. § 404.1520c(a) ("The most important factors ... [used to] evaluate the persuasiveness of medical opinions and prior administrative medical findings are supportability ... and consistency.").  The ALJ was not required to discuss every piece of evidence in the record, and the ALJ's decision showed that the ALJ considered Plaintiff's medical condition as a whole.  *Coley*, 771 F. App'x at 917; *Dyer*, 395 F.3d at 1211; *Freeman v. O'Malley*, No. 1:23-CV-305, 2024 WL 776615, *5 (M.D. Ala. Feb. 26, 2024)

("By considering the record as a whole to make the RFC determination, the ALJ did not impermissibly substitute his judgment for the physicians' judgments (even though his opinion was different than the physicians' opinions)."). The evidence to which Plaintiff cites does not undermine the ALJ's determination. Plaintiff "'must do more than point to evidence in the record that supports h[is] position; [he] must show the absence of substantial evidence supporting the ALJ's conclusion.'" *Thompkins v. Kijakazi*, No. 2:21-CV-216, 2022 WL 2517185, *7 (M.D. Ala. July 6, 2022) (quoting *Sims v. Comm'r of Soc. Sec.*, 706 F. App'x 595, 604 (11th Cir. 2017) (per curiam)) (brackets added). "The fact that Plaintiff disagrees with the ALJ's decision, or that there is other evidence in the record that weighs against the ALJ's decision, does not mean that the decision is unsupported by substantial evidence." *Lanier v. Colvin*, No. CV414-004, 2015 WL 3622619, *1 (S.D. Ga. June 9, 2015) (citing *Crawford*, 363 F.3d at 1158-59); *Bouie v. Astrue*, 226 F. App'x 892, 894 (11th Cir. 2007) ("An ALJ may reject the opinion of any physician when the record supports a contrary conclusion. The resolution of conflicting evidence is the function of the ALJ, not the Court.") (citation omitted). Put most simply, "[t]o the extent Plaintiff disagrees with the ALJ's interpretation of that evidence, that is not a ground for remand." *Horne v. Comm'r of Soc. Sec.*, No. 2:20-CV-181, 2021 WL 3023679, *5 (M.D. Fla. June 28, 2021), *report and recommendation adopted*, No. 2:20-CV-181, 2021 WL 3022727 (M.D. Fla. July 16, 2021) (citing *Sarria v. Comm'r of Soc. Sec.*, 579 F. App'x 722, 724 (11th Cir. 2014)); *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014) ("'We may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the Commissioner.' 'If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it.'") (citations omitted).

### B.   The ALJ's Evaluation of Plaintiff's Subjective Statements

Plaintiff argues that the ALJ failed to properly evaluate his subjective statements. (Doc. 10 at p. 11).  Plaintiff maintains that the ALJ simply summarized some of the evidence relevant to his mental impairments but failed to specify the reasons for finding that Plaintiff's statements regarding the severity of his impairments were not supported.  (*Id*. at p. 13). The Commissioner contends that substantial evidence supported the ALJ's determination that Plaintiff's statements regarding the intensity, persistence, and limiting effects of his alleged symptoms were not entirely consistent with the evidence in the record.  (Doc. 11 at p. 11).

In determining whether a claimant is disabled, the claimant's symptoms, including pain, are considered to the extent they are reasonably consistent with objective medical evidence and other evidence. 20 C.F.R. § 404.1529(a).  The Commissioner will consider a claimant's statements about his or her symptoms and any description that the claimant's medical sources or nonmedical sources may provide about how the symptoms affect the claimant's activities of daily living and ability to work.  *Id*.  However, a claimant's statements about pain or symptoms alone are not enough to establish the existence of a physical or mental impairment or disability.  *Id*.; SSR 16-3p, 2017 WL 5180304, *2; *Turner v. Kijakazi*, No. 1:19-CV-774, 2021 WL 3276596, *9 (M.D. Ala. July 30, 2021) ("[A]n ALJ is not required to accept a claimant's subjective allegations of pain or symptoms.").  To establish a disability based on testimony of symptoms, the claimant must provide evidence of an underlying medical condition and either (1) objective medical evidence confirming the severity of the alleged symptoms, or (2) evidence establishing that the objectively determined medical condition could be reasonably expected to give rise to the alleged symptoms.  *Carroll v. Soc. Sec. Admin., Comm'r*, No. 6:21-CV-00014, 2022 WL 3718503, *12

(N.D. Ala. Aug. 29, 2022) (citing *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002));

20 C.F.R. § 404.1529(a)-(b); SSR 16-3p, 2017 WL 5180304, *3.

"Consideration of a claimant's symptoms therefore involves a two-step process, wherein the SSA first considers whether an underlying medically determinable physical or mental impairment exists that could reasonably be expected to produce the claimant's symptoms, such as pain." *Mixon v. Kijakazi*, No. 8:20-CV-2991, 2022 WL 2816964, *3 (M.D. Fla. July 19, 2022); 20 C.F.R. § 404.1529(a)-(b); SSR 16-3p, 2017 WL 5180304, *2-3. Once an underlying physical or mental impairment that could reasonably be expected to produce the claimant's symptoms is established, the ALJ must then consider all of the evidence in the record to evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit the claimant's capacity for work. SSR 16-3p, 2017 WL 5180304, *3-4; 20 C.F.R. § 404.1529(a)-(c); *Stromgren v. Kijakazi*, No. 3:21-CV-908, 2022 WL 1205347, *5 (N.D. Fla. Mar. 11, 2022), *report and recommendation adopted*, No. 3:21-CV-908, 2022 WL 1204519 (N.D. Fla. Apr. 22, 2022). In doing so, SSR 16-3p and the regulations require an ALJ to consider certain factors, including: (1) daily activities; (2) location, duration, frequency, and intensity of pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken; (5) treatment, other than medication, to relieve pain or other symptoms; (6) any measures used to relieve pain or other symptoms; and (7) any other factors concerning functional limitations and restrictions due to pain or other symptoms. SSR 16-3p, 2017 WL 5180304, *8-9; 20 C.F.R. § 404.1529(c)(3).

The ALJ will also consider whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between claimant's statements and the rest of the evidence, including the history, signs and laboratory findings, and statements by treating and non-treating

sources or other persons about how the symptoms affect the claimant.  20 C.F.R. § 404.1529(c)(4).

"However, Eleventh Circuit case law does not require an ALJ to enumerate every factor in every

decision."  *Alexander v. Comm'r of Soc. Sec. Admin.*, No. 6:20-CV-01862, 2022 WL 4291335,

*5 (N.D. Ala. Sept. 16, 2022) (citing *Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995)

(concluding that the ALJ need not cite to "particular phrases or formulations" but must provide

reasons that would enable a reviewing court to conclude that the ALJ considered the claimant's

medical condition as a whole).  If the ALJ discredits a claimant's subjective statements, the ALJ

"must articulate explicit and adequate reasons for doing so."  *Foote*, 67 F.3d at 1561-62; *Patterson

v. Kijakazi*, No. 8:21-CV-359, 2022 WL 3028058, *3 (M.D. Fla. Aug. 1, 2022).  That is, "[w]here

proof of a disability is based upon subjective evidence and a credibility determination is a critical

factor in the decision, if the ALJ discredits the claimant's testimony as to his subjective symptoms,

the ALJ must either explicitly discredit such testimony or the implication from the ALJ's opinion

must be so clear as to amount to a specific credibility finding."  *Martinez v. Comm'r of Soc. Sec.*,

No. 21-12116, 2022 WL 1531582, *2 (11th Cir. May 16, 2022) (citing *Foote*, 67 F.3d at 1562).

"Subjective complaint credibility is the province of the ALJ."  *Williams v. Kijakazi*, No. 2:20-CV-

277, 2022 WL 736260, *2 (M.D. Ala. Mar. 10, 2022) (citing *Mitchell*, 771 F.3d at 782).

        In applying the two-step process, the ALJ found that Plaintiff had medically determinable

impairments that could reasonably be expected to cause some of his alleged symptoms but that his

"statements concerning the intensity, persistence and limiting effects of his symptoms are not

especially consistent with the medical evidence and other evidence in the record (nor are they

very persuasive) for the many reasons explained within this decision."  (Tr. 15).  As previously

discussed *supra*, the record reflects that the ALJ sufficiently addressed Plaintiff's subjective

statements in accordance with the regulations and considered the record as a whole.  The ALJ

discussed that mental status and psychiatric examinations throughout the record were largely unremarkable, even when Plaintiff was intoxicated.  (Tr. 15-19, 308, 323, 338, 352, 419, 422, 461, 471, 480, 497, 507, 527, 540, 590-91).  The ALJ mentioned that Plaintiff did not obtain mental health treatment during the relevant period and that, while Plaintiff reported he could not afford treatment, the record did not show any attempt at procuring low-cost care or prescription assistance and that Plaintiff offered no viable explanation as to why he was able to afford purchases of daily alcohol, but not prescription medication.  (Tr. 17).  The ALJ, however, did not base a determination on noncompliance with medication or failure to seek treatment.  Instead, the ALJ simply considered Plaintiff's noncompliance and lack of mental health treatment as factors in weighing the credibility of his subjective statements. *See Ogletree v. Colvin*, No. 5:12-CV-389, 2013 WL 6169161, *10 (M.D. Ga. Nov. 25, 2013) (finding that the plaintiff was not denied benefits for "failure to follow treatment" where the ALJ properly considered the plaintiff's non-compliance with her therapeutic and pharmacological regimens as a factor in assessing the credibility of her testimony); SSR 16-3p, 2017 WL 5180304, *9-10.  A review of the ALJ's decision reflects that the ALJ considered the entire record and included a thorough discussion of the objective medical evidence, the function reports, opinion testimony, and Plaintiff's activities of daily living.  The ALJ thus did not rely "primarily if not exclusively" on Plaintiff's medication noncompliance or failure to seek treatment as the basis to discount his subjective statements.

"[A]n ALJ is not required to accept a claimant's subjective allegations of pain or symptoms."  *Turner*, 2021 WL 3276596, *9; 20 C.F.R. § 404.1529(a) ("[S]tatements about [a claimant's] pain or other symptoms will not alone establish that [a claimant is] disabled.").  The court finds that the ALJ properly evaluated Plaintiff's subjective complaints in light of the evidence of record and formulated appropriate RFC restrictions to accommodate the limitations

arising from his mental impairments.  Credibility determinations are the province of the ALJ, *Mitchell*, 771 F.3d at 782, and the ALJ sufficiently cited evidence in the record for finding that Plaintiff's statements were not entirely consistent with the record as a whole.  *See Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 939 (11th Cir. 2011) (footnote omitted) (The appropriate question for a reviewing court "is not ... whether [the] ALJ could have reasonably credited [the claimant's] testimony, but whether the ALJ was clearly wrong to discredit it.").

### C.      Hypothetical Question to the Vocational Expert

Plaintiff contends that the ALJ failed to account for moderate limitations in his ability to concentrate, persist, or maintain pace in the hypothetical question to the VE.  (Doc. 10 at p. 14).  Plaintiff specifically asserts that the ALJ failed to include any limitations regarding his ability to concentrate over a period of time, persist at tasks, or maintain a particular work pace over the course of a workday or workweek.  (*Id*.).  The Commissioner contends that the RFC contained a number of mental limitations to account for Plaintiff's impairments, that Plaintiff has not shown greater limitations were supported by the record evidence, and that the ALJ sufficiently accounted for a moderate limitation in concentrating, persisting, or maintaining pace in the RFC assessment limiting Plaintiff to unskilled work.  (Doc. 11 at pp. 13-14).

The ALJ's rating of Plaintiff as having moderate limitation in concentrating, persisting, or maintaining pace was made pursuant to the psychiatric review technique ("PRT") used in assessing mental impairments.  (Tr. 13-14).  *See* 20 C.F.R. § 404.1520a(c)-(d).  As the ALJ explained:

> The limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment of the areas of mental functioning. The following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the "paragraph B" mental function analysis.

(Tr. 14).  *See* 20 C.F.R. §§ 404.1520(a)(4), 404.1520a(b)-(d).  "The ALJ is required to incorporate the results of the special technique into her findings and conclusions," but the technique "is separate from the ALJ's evaluation of the claimant's RFC assessment, the latter of which is an assessment of the claimant's ability to do work despite his impairments.  The mental RFC assessment is a more detailed assessment of the claimant's functionality."  *Jacobs v. Comm'r of Soc. Sec.*, 520 F. App'x 948, 950 (11th Cir. 2013) (internal citations omitted).

"[W]hen medical evidence demonstrates that a claimant can engage in simple, routine tasks or unskilled work despite limitations in concentration, persistence, and pace, courts have concluded that limiting the hypothetical to include only unskilled work sufficiently accounts for such limitations."  *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011); *Duval v. Comm'r of Soc. Sec.*, 628 F. App'x 703, 712-13 (11th Cir. 2015) (holding that the ALJ sufficiently accounted for the plaintiff's moderate limitations in concentration, persistence, or pace by limiting him to simple, routine, and repetitive tasks, which medical evidence showed he could perform); *Jacobs v. Comm'r of Soc. Sec.*, 520 F. App'x 948, 950-51 (11th Cir. 2013) ("[L]imiting the hypothetical questions to include only unskilled work sufficiently accounts for the claimant's limitations in maintaining his concentration, persistence, or pace where the medical evidence demonstrates that the claimant can engage in simple, routine tasks or unskilled work despite his limitations."); *Jarrett v. Comm'r of Soc. Sec.*, 422 F. App'x 869, 872 (11th Cir. 2011) ("[A]n ALJ's hypothetical restricting [a] claimant to simple and routine tasks adequately accounts for restrictions related to concentration, persistence and pace where the medical evidence demonstrates that the claimant retains the ability to perform the tasks despite concentration deficiencies.").  "While impairments in concentration, persistence, or pace may be explicitly accounted for in a hypothetical, restricting a claimant to 'simple work,' 'simple and routine tasks,' or 'unskilled

work' is sufficient when the medical evidence of record indicates that a claimant retains the ability to work despite those limitations." *McCormick v. Colvin*, No. 3:15CV458, 2016 WL 3671421, *4 (M.D. Ala. July 8, 2016) (citing *Lee v. Comm'r, Soc. Sec. Admin.*, 551 F. App'x 539, 541 (11th Cir. 2014) ("The ALJ adequately accounted for all of [the plaintiff's] impairments in the hypothetical posed to the VE because he implicitly accounted for [the plaintiff's] limitations in concentration, persistence, and pace when he imposed a limitation of simple work.")); *Jackson v. Kijakazi*, No. 1:20-CV-00039, 2021 WL 4472597, *6 (M.D. Ala. Sept. 29, 2021) ("[L]imiting the hypothetical to 'simple work' or 'unskilled work' sufficiently, albeit implicitly, accounts for an impairment in concentration when the medical evidence indicates that a claimant retains the ability to work despite the limitation."); *Jacobs*, 520 F. App'x at 951 (finding limitation of "one to three step non-complex tasks" sufficiently accounted for moderate limitation in concentration, persistence, or pace); *Washington v. Soc. Sec. Admin., Comm'r*, 503 F. App'x 881, 883 (11th Cir. 2013) (finding limitation "to performing only simple, routine repetitive tasks with up to three-step demands, and only occasional changes in the work setting, judgment, or decision making" was sufficient to account for moderate limitation in maintaining concentration, persistence, or pace); *Scott v. Comm'r of Soc. Sec.*, 495 F. App'x 27, 29 (11th Cir. 2012) (finding that because medical evidence showed the plaintiff could engage in simple, routine tasks or unskilled work despite moderate limitations in concentration, persistence, or pace, the hypothetical question including only unskilled work was sufficient); *Mijenes v. Comm'r of Soc. Sec.*, 687 F. App'x 842, 846 (11th Cir. 2017) (because medical evidence showed that the plaintiff could perform simple, routine tasks despite her limitations in concentration, persistence, and pace, limiting the plaintiff to unskilled work sufficiently accounted for her moderate difficulties in concentration, persistence, and pace).

Here, in making the determination that there were jobs in the national economy that Plaintiff could perform, the ALJ relied upon the testimony of a VE. (Tr. 20-21, 65-70). Although the hypothetical did not explicitly refer to Plaintiff's moderate limitation in his ability to maintain concentration, persistence, or pace, it did limit Plaintiff mentally to unskilled, routine and repetitive types of work involving no more than one-to-four step instructions, only occasional changes in the daily work routine and occasional decision-making, and no more than occasional interactions with supervisors and members of the general public, and not requiring transactional activities or assembly-line interactions with several other employees. (Tr. 66). Based upon the case authority, those restrictions were sufficient, so long as the medical evidence indicated that Plaintiff retained the ability to work despite the limitation in his ability to maintain concentration, persistence, or pace. *See Jacobs*, 520 F. App'x at 950-51; *Jarrett*, 422 F. App'x at 872; *Washington*, 503 F. App'x at 883; *Scott*, 495 F. App'x at 29; *see also Whitaker v. Colvin*, No. 2:12CV812, 2013 WL 5493200,*4 (M.D. Ala. Oct. 1, 2013) (finding that because the ALJ's hypothetical questions to the VE expressly limited plaintiff to work that did not involve complex or detailed instructions and expressly limited her contact with others, and because the VE limited plaintiff to unskilled work, the ALJ implicitly accounted for moderate limitations in plaintiff's social functioning and concentration, persistence, and pace).

The record reflects that in determining Plaintiff's mental RFC, the ALJ considered both Plaintiff's lack of mental health treatment and Plaintiff's mental status examinations that consistently showed unremarkable findings such as intact memory, normal logical thought processes, and fair to good attention and concentration, all of which supported a finding that Plaintiff could perform simple, unskilled work. (Tr. 14, 16-19, 308, 323, 338, 352, 419, 422, 461, 471, 480, 497, 507, 527, 540, 590-91). As a result, the ALJ found that nothing in the record

showed any problems with orientation, thoughts, memory, concentration, insight, or judgment that would affect Plaintiff's ability to engage in jobs with excessive workloads, quick decision making, rapid changes, or multiple demands.  (Tr. 19).  The ALJ also considered Plaintiff's function report, which reflected his ability to focus on activities such as preparing simple meals, performing light chores, counting change, and socializing with family and friends.  (Tr. 14, 213-15, 433).  In short, it is apparent that the ALJ properly considered the record as a whole in determining Plaintiff's mental RFC and that Plaintiff has failed to prove limitations beyond those in the ALJ's RFC finding and hypothetical question to the VE.

## V.     Conclusion

After carefully and independently reviewing the record, and for the reasons stated above, the court concludes as follows:

- that Plaintiff's motion for summary judgment (Doc. 10) is due to be **DENIED**;

- that the Commissioner's motion for summary judgment (Doc. 11) is due to be **GRANTED**; and

- that the Commissioner's decision is due to be **AFFIRMED**.

A separate judgment will issue.

**DONE** this the 3rd day of December 2024.

_____
**CHAD W. BRYAN**
**UNITED STATES MAGISTRATE JUDGE**